UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PETER J. BRUNO<br><br>v.<br><br>MOUNTAINSIDE AT CROTCHED MOUNTAIN CONDOMINIUM ASSOCIATION, ROGER K. LUBY AND PEAK RESORTS, INC., D/B/A CROTCHED MOUNTAIN SKI AND RIDE AREA | Civil Action No. 1:15-CV-366-LM |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

NOW COME defendants Mountainside at Crotched Mountain Condominium Association ("Mountainside"), Roger K. Luby ("Mr. Luby") and Peak Resorts, Inc., d/b/a Crotched Mountain Ski and Ride Area ("Crotched Mountain") (collectively, the "Crotched Mountain Defendants"), by and through their attorneys, Devine, Millimet & Branch, Professional Association, and respectfully submit the following Memorandum of Law in Support of their Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).

**I.    INTRODUCTION**

Plaintiff Peter J. Bruno ("Mr. Bruno") has asserted claims sounding in negligence arising from injuries he allegedly suffered while downhill skiing at Crotched Mountain on January 24, 2015.  Mr. Bruno's asserted injuries occurred while he was skiing outside of the designated trail system at Crotched Mountain and, as the complaint claims, encountered and fell into a "storm water management retention basin."  As discussed more fully below, Mr. Bruno may not maintain his claims against the Crotched Mountain Defendants.  Rather, three statutes, RSA 225-A (the Skiers, Ski Area and Passenger Tramway Safety Act), RSA 212:34 (Liability of

Landowners), and RSA 508:14 (Limitation of Actions – Landowner Liability Limited), as well as common law assumption of the risk, apply variously to these defendants and completely bar his claims as a matter of law and require judgment dismissing Mr. Bruno's complaint.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACT[1]

1.    On January 24, 2015, Mr. Bruno alleges that he was a skier at Crotched Mountain and/or on land owned, operated, controlled and maintained by Mountainside.  *See* Complaint and Jury Demand ("Complaint"), para. 9.

2.    Mr. Bruno alleges that defendant Roger Luby is an officer of Mountainside and was responsible for maintaining and managing the property.  *See id*. at 3.  There are no other independent allegations directed at Mr. Luby in the Complaint.  *See id*., generally.

3.    While skiing on January 24, 2015, Mr. Bruno alleges that he fell into a storm water management retention basin.  *See id*. at 27.

4.    Mr. Bruno alleges that the Crotched Mountain Defendants were negligent in failing to provide adequate warning to skiers about the storm water management retention basin. *See id*. at 23-26.

5.    On January 24, 2015 and at present, Crotched Mountain's trail map was available to all customers in a brochure document titled Trail Map and Mountain Guide.  This document was available at all of the ski area's ticket counters which are located inside the base lodge.  *See* Affidavit of Patrick Terry, In Support of Defendants' Motion for Judgment on the Pleadings ("Terry Aff."), para. 2.  A copy of the 2014-2015 trail map is attached as the first page of Ex. A to the Terry Aff.

---

[1] Defendants assume the truth of these facts solely for the purpose of this motion, and expressly reserve the right to contest any and all of plaintiff's alleged facts, if necessary.

6. The ski area's trail map is also available on the ski area's website found at www.crotchedmtn.com/trail-map/. There is a separate tab on the Crotched Mountain website's home page that a user can click on and pull up the trail map. This current trail map is the same trail map that was on the Crotched Mountain website in January 2015. A copy of the trail map from the website is attached as Ex. B to the Terry Aff. *See id*. at 3.

7. The Crotched Mountain ski patrol was called to the scene of the accident and did a contemporaneous investigation, including taking the two photographs attached as Ex. C to the Terry Aff. *See id*. at 4

8. It is undisputed that Mr. Bruno was skiing down under the lift line of the West Lift when he allegedly encountered the "stormwater management retention basin" that he alleges caused his injuries. The location of the accident as matched to the trail map is shown on Ex. D to the Terry Aff. *See id*. at 4.

9. The area under the West Lift line where Mr. Bruno was skiing is not a designated trail on the ski area's trail map. It was not open to skiers or snowboarders on January 24, 2015 and it was not groomed. Designated trails are indicated by color lines on the Crotched Mountain trail map according to the color code established by the New Hampshire Ski Statute to designate a trail's degree of difficulty. *See id*. at 5, and Ex. A, B and D to the Terry Aff. (trail maps).

10. Research conducted by Crotched Mountain in response to plaintiff's claims in this lawsuit has determined that all of the area of the West Lift line where Mr. Bruno fell (adjacent to Tower 3 as shown on the first photograph in Ex. C to the Terry Aff.) was on land owned by its abutter, Mountainside. *See id*. at 6; *see also* Affidavit of John Young, in Support of Defendants' Motion for Judgment on the Pleadings ("Young Aff.), para. 4 (stating that the first photo in Ex. C

to the Terry Aff. shows the tower adjacent to the area where Mr. Bruno fell, Tower 3 and that entire area is Mountainside's land).

11. Mountainside was developed by a prior owner of the ski area in the late 1980s. *See* Terry Aff., para. 6; *see also* Young Aff., para. 2.

12. To create Mountainside, existing ski area land was subdivided off from the ski area's property. *See* Young Aff., para. 2. This subdivision is documented in Ex. A to the Young Aff. which is a survey filed of record in the Hillsborough County Registry of Deeds, bearing the subdivision approval of the Bennington, N.H. Planning Board. Tract 4 on that plan shows the land that was subdivided by the ski area owners to create Mountainside's land. *See id*.

13. This plan then became the base plan for the Mountainside condominium development. Attached as Ex. B to the Young Aff. is such a plan showing the lift line and towers of the West Lift. The boundaries of Mountainside's land, Tract 4 have been highlighted in blue. Tower 3 of the West Lift is indicated in pink. *See id*. at 3. The towers on the West Lift as shown on this plan are numbered from the base of the lift and are shown on Ex. B to the Young Aff. Tower 3 is well within Tract 4 and thus Mr. Bruno's accident occurred on Mountainside's land. *See id*. at 4.

14. The current ski area's parent company, Peak Resorts, Inc., leased the ski area and brought it back into operation starting in 2002. Crotched Mountain made no changes to the tower locations of the West Lift at that time or since then. *See* Terry Aff., para. 6.

15. The ski area owns the West Lift and has an easement from Mountainside to operate it where the lift is located on Mountainside's property. The ski area is responsible for all operation and maintenance of the West Lift. *See id*. at 7.

16. While Mr. Bruno fell on Mountainside's land, Mountainside has no ownership or operation rights as to the West Lift. Instead the Condominium Declaration creating Mountainside gives the ski area an easement on Mountainside's land for the operation and maintenance of any of the ski area's lifts and trail system. The ski area has the right to access any of its lifts and trails that are on Mountainside land. Relevant excerpts from the Condominium Declaration are highlighted and attached as Ex. C to the Young Aff. *See* Young Aff., para. 5.

17. Mountainside has never charged any patron of defendant Crotched Mountain Ski and Ride for access to Mountainside's land. *See* Young Aff., para. 6.

### III.   ARGUMENT

#### A.   Legal Standard.

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is essentially subject to the standard applicable to a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim. *See Hanus v. Loon Mountain Recreation Corp.*, 2014 WL 1513232, *1 (DNH 2014) (Laplante, J.) (citing *Simmons v. Galvin*, 575 F.3d 24, 30 (1st Cir. 2009). To survive such a motion, a complaint "must make factual allegations sufficient to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (remaining citations omitted). In other words, "a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" *Pérez–Acevedo v. Rivero–Cubano*, 520 F.3d 26, 29 (1st Cir.2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)). Moreover, in reviewing a motion pursuant to Rule 12(c), courts "may consider 'documents the authenticity of which are not disputed by the parties; ... documents central to plaintiffs' claim; [and] documents sufficiently

5

referred to in the complaint.'" *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir.2007) (brackets and ellipses in original) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993)). In such a scenario, "'questions of law [are] ripe for resolution at the pleadings stage.'" *Hanus*, 2014 WL at *1 (brackets in original) (quoting *Simmons*, 575 F.3d at 30). In the present matter, an analysis of the Complaint, the 2014-2015 trail map, land records and photographs of the relevant area requires an entry of judgment on the pleadings dismissing plaintiff's action as a matter of law.

### B. RSA 225-A Bars Mr. Bruno's Claims against Crotched Mountain.

#### 1. Mr. Bruno's alleged accident was an inherent risk of skiing.

Mr. Bruno's claims fall squarely within the parameters of the RSA 225-A:24 and, accordingly, must fail against Crotched Mountain. RSA 225-A:24 states, in pertinent part:

> **Responsibilities of Skiers and Passengers**. – It is hereby recognized that, <u>regardless of all safety measures which may be taken by the ski area operator, skiing</u>, snowboarding, snow tubing, and snowshoeing as sports . . . <u>may be hazardous</u> . . . . Therefore:
>
>   I.   <u>Each person who participates in the sport of skiing</u>, snowboarding, snow tubing, and showshoeing <u>accepts as a matter of law, the dangers inherent in the sport, and to that extent may not maintain an action against the operator for any injuries</u> which result from such inherent risks, dangers, or hazards. <u>The categories of such risks, hazards, or dangers which the skier</u> or passenger <u>assumes as a matter of law include but are not limited to the following: variations in terrain, surface or subsurface snow or ice conditions; bare spots</u>; rocks, trees, stumps and other forms of forest growth or debris; <u>terrain, lift towers, and components thereof (all of the foregoing whether above or below snow surface); pole lines</u> and plainly marked or visible snow making equipment; <u>collisions with</u> other skiers or other persons or with <u>any of the categories included in this paragraphs</u>.
>
>   II.   Each skier . . . <u>shall have the sole responsibility for knowing the range of his or her own ability</u> to negotiate any slope, trail, terrain, or passenger tramway.   * * *
>
>   III.   Each skier . . . <u>shall conduct himself or herself, within the limits of his or her own ability, maintain control of his or her speed and course at all times</u> both on the ground and in the air, while skiing, snowboarding,

6

> snow tubing, and snowshoeing <u>heed all posted warnings, and refrain from acting in a manner which may cause or contribute to the injury of himself,</u> herself, or others.
>
> \* \* \*
>
> V. <u>No skier</u>, passenger or other person <u>shall</u>:
>
> \* \* \*
>
> (g) <u>Ski or otherwise access terrain outside open and designated ski trails and slopes or beyond ski area boundaries</u> without written permission of said operator or designee.

(Bold emphasis in original, underline emphasis added).

In interpreting the foregoing language, the New Hampshire Supreme Court has long-held that "ski area operators owe <u>no duty to protect patrons from the inherent risks of skiing</u> and thus are immunized from liability for any negligence related to these risks." *Cecere v. Loon Mountain Recreation Corp.*, 155 N.H. 289, 295 (2007) (emphasis added) (barring claim for inadequate construction, design or maintenance of jump), citing *Rayeski v. Gunstock Area*, 146 N.H. 495, 499 (2001) (barring plaintiff's claims for injuries sustained after colliding with a light pole while skiing). Indeed, "[i]t is clear from the plain and unambiguous wording of this section that the legislature intended to place the burden of certain risks or dangers on skiers, for action arising as a result of dangers inherent in the sport of skiing, rather than on ski area operators." *Berniger v. Meadow Green-Wildcat Corp.*, 945 F.2d 4, 7 (1st Cir. 1991) (affirming N.H. District Court (Loughlin, J.) decision dismissing plaintiff skier's complaint for injuries arising out of collision with safety fence); *see also Rayeski*, 146 N.H. at 497 ("[r]ecognizing that RSA 225-A:24 essentially adopted the primary assumption of the risk doctrine, we have interpreted it to mean that ski area operators owe no duty to skiers to protect them from the inherent risks of skiing").

In his Complaint, Mr. Bruno has taken the position that the so-called "storm water management retention basin" does not qualify as an inherent risk of skiing. *See* Complaint, para.

7

18.  In support of his contention, Mr. Bruno states only that the basin was not a natural condition (*See id*. at 15, 16 and 21), and that the basin was unnecessary and man-made (*see id.* at 17).  He also asserts that it was difficult, if not impossible to see.  *See id*. at 24.  None of these contentions remove Mr. Bruno's claims from the scope of the immunity found in RSA 225-A.

The enumerated list of "inherent dangers" found in RSA 225-A:24, I, is not an exclusive list.  *See Camire v. The Gunstock Area Commission*, 166 N.H. 374, 378 (2014) (statute "does not limit the risks assumed to those enumerated therein"), quoting *Rayeski*, 146 N.H. at 498; *see also Nutbrown v. Mount Cranmore, Inc.*, 140 N.H. 675, 684 (1996) ("[t]he enumerated risks, however, are not the only ones assumed by the skier; the statute states that assumed risks 'include *but are not limited to*' those set forth in the quoted provision") (emphasis in original).  Rather, "[b]y its express language, section 225-A:24 does not restrict itself only to claims resulting from those hazards or risks specifically enumerated.  The phrase 'includ[ing] but . . . not limited to' which precedes the specification <u>extends the statute's provisions to everything embraced in that class</u>, though not specifically enumerated."  *Berniger v. Meadow Green-Wildcat Corp.*, 945 F.2d 4, 7-8 (1991).

The fact that the basin may not be a natural condition is of no import in determining whether it falls within the scope of RSA 225-A:24.  Both natural and man-made conditions are specifically included as classes of risk.  The New Hampshire Supreme Court has expressly held that it "discern[s] no general intent in RSA 225-A:24 to classify potential obstacles on ski trails based upon their size <u>or whether they are natural or man-made</u>, or to require they be marked or their visibility enhanced accordingly."  *Rayeski*, 146 N.H. at 498 (emphasis added).  Similarly, whether a potential obstacle is hidden or difficult to see does not alter its status or remove it from the statute.  Indeed, "[t]he statute specifies that <u>hidden and obvious man-made conditions and</u>

objects . . . (whether located above or below the surface) . . . are risks of skiing that a skier must assume as a matter of law." *Berniger*, 945 F.2d at 8 (emphasis added).

Further, the statute explicitly includes "variations in terrain" in its listing of inherent dangers, which encompasses the basin (and other man-made alterations) within its scope. RSA 225-A:24, I; *see Cecere*, 155 N.H. at 294 (finding that man-made jump was a variation in terrain and discerning no general intent to classify potential obstacles on ski trails based upon whether natural or man-made). As the *Cecere* decision explains, "[t]he plain meaning of the word 'variation' is a 'change in the form, position, state or quality of something.'" *Cecere*, 155 N.H. at 294, quoting *Webster's Third New International Dictionary* 2533 (unabridged ed.2002). Terrain means simply "the physical features of a tract of land." *Id.*, quoting *Lorette v. Peter-Sam Inv. Properties*, 140 N.H. 208, 211 (1995) (holding that man-made alterations to land such as excavation pit constitute "variations in terrain" while interpreting similar statutory immunity provision concerning off-highway recreational vehicles at RSA 215-A:5-c). In the present matter, where plaintiff asserts that the basin was man-made, it "constituted a change in the physical features of the land and thus was a 'variation[] in terrain.'" *Cecere*, 155 N.H. at 294. Pursuant to RSA 225-A:24, plaintiff, as an individual participating "in 'the sport of skiing[,]' assume[d] the risk of 'variations in terrain' *as a matter of law*" and, therefore, may not recover against Crotched Mountain. *Id.* at 295 (emphasis in original).

> **2. Crotched Mountain cannot be liable for injuries occurring outside open and designated ski trails.**

There is a second ground for Crotched Mountain's immunity pursuant to the Ski Statute. The plaintiff's asserted injury occurred while he was skiing "outside open and designated ski trails and slopes or beyond ski area boundaries." RSA 225-A:24, V, g. Indeed, the basin that is the location of plaintiff's alleged injuries is not on a designated ski trail or slope, but rather is

adjacent to the base of tower 3 of the West double chair lift.  As clearly shown in the trail maps attached as Ex. A, B and D to the Terry Aff., the only designated trails in that area are shown with green lines and labels (Comet and Re-entry).  There is no such designation or label under the lift line.  As a result, plaintiff's use of that area for skiing was expressly prohibited by statute and relieves Crotched Mountain of any obligation.  This point is emphasized and specifically reiterated at RSA 225-A:25, V.  That provision states:

> [n]o ski area operator shall be held responsible for ensuring the safety of, or for damages including injury or death resulting to, skiers or other persons who utilize the facilities of a ski area to access terrain outside open and designated ski trails.  Ski areas shall not be liable for damages, including injury or death, to persons who venture beyond such open and designated ski trails.

(Emphasis added).

To ensure that skiers and other users of a ski area are aware of open and designated ski trails and slopes (so as to be able to ski within those areas), RSA 225-A:23 requires ski area operators to make a map "available . . . to all skiers and passengers indicating the system of ski trails, slopes, tubing terrain, and designated freestyle terrain in accordance with the color code" prescribed by statute.  Crotched Mountain complied with this requirement by making its 2014-2015 trail map readily available to skiers and snowboarders.  Its trail map clearly showed its designated ski trails, which do not include the area under the West chair lift line where plaintiff's asserted injuries occurred.  Accordingly, Crotched Mountain owed no duty to plaintiff and cannot be liable for his injuries as a matter of law.

### C. RSA 212:34 Bars Mr. Bruno's Claims against Mountainside and Mr. Luby.

As the owner of the area of land on which Mr. Bruno claims he was injured, neither Mountainside nor its agent, Mr. Luby, owed a duty of care to Mr. Bruno due to Mr. Bruno's status as an outdoor recreational activity participant. Specifically, RSA 212:34, II provides:

> A landowner owes no duty of care to keep the premises safe for entry or use by others for outdoor recreational activity or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes . . . .[2]

(Emphasis added). Similarly, RSA 212:34, III states:

> A landowner who gives permission to another to enter or use the premises for outdoor recreational activity does not thereby:
> (a) Extend any assurance that the premises are safe for such purpose;
> (b) Confer to the person to whom permission has been granted the legal status of an invitee to whom a duty of care is owed; or
> (c) Assume responsibility for or incur liability for an injury to person or property caused by any act of such person to whom permission has been granted . . . .

(Emphasis added). The statute continues at part VIII with a section that mirrors RSA 225-A:24 and states:

> It is recognized that outdoor recreational activities may be hazardous. Therefore, each person who participates in outdoor recreational activities accepts, as a matter of law, the dangers inherent in such activities, and shall not maintain an action against an owner, occupant, or lessee of land for any injuries which result from such inherent risks, dangers, or hazards. The categories of such risks, hazards, or dangers which the outdoor recreational participant assumes as a matter of law include, but are not limited to, the following: variations in terrain, trails, paths, or roads, surface or subsurface snow or ice conditions, bare spots, rocks, trees, stumps, and other forms of forest growth or debris, structures on the land, equipment not in use, pole lines, fences, and collisions with other objects or persons.

RSA 212:34, VIII (emphasis added).

---

[2] Pursuant to RSA 212:34, I, c, "'[o]utdoor recreational activity' means outdoor recreational pursuits including, but not limited to . . . winter sports . . . ." (Emphasis added). RSA 225-A:2 defines "winter sports" to mean "the use of skis, snowboards, snow tubes, snowshoes, and any device being utilized by a disabled or adaptive participant for winter recreation or competition." (Emphasis added).

11

Each of the foregoing provisions bars plaintiff's claims in this matter against both Mountainside and Mr. Luby.[3] Moreover, taken together, they express an unmistakable intent to relieve a landowner of any liability to an outdoor recreational user for injury or damage.[4] It is undisputed that, as a skier, Mr. Bruno was an outdoor recreational user. As such, under part II of RSA 212:34, Mountainside (and its agents) owed no duty of care to Mr. Bruno to provide warning of the basin. In New Hampshire, as elsewhere, where there is no duty, there can be no liability as a matter of law. *See Everitt v. General Elec. Co.*, 159 N.H. 232, 235 (2009) ("[a]bsent a duty, there is no negligence"); *see also Carignan v. New Hampshire Intern. Speedway, Inc.*, 151 N.H. 409, 412 (2004) ("[a]bsent the existence of a duty, a defendant cannot be liable for negligence"). Moreover, this part does not require that the use be permissive; in fact, there is no mention of "permission" whatsoever to invoke the provided immunity. Rather, it simply states that there is "no duty" on the part of a landowner to make its "premises safe for entry or use by others for outdoor recreational activity." RSA 212:34, II. New Hampshire and federal courts interpreting this provision have routinely barred claims for injury sounding in negligence against landowners of all kinds. *See Dolbeare v. City of Laconia*, 120 A.3d 146, 149-150 (2015) (vacating denial of motion to dismiss plaintiff's claims pursuant to RSA 212:34, II and RSA 508, I in suit against City of Laconia arising out of injury occurring on playground); *See also Collins v. Martella*, 17 F.3d 1, 3-6 (1st Cir. 1994) (affirming grant of summary judgment

---

[3] RSA 212:34, I, b, defines "Landowner" to mean "an owner, lessee, holder of an easement, occupant of the premises, or person managing, controlling or overseeing the premises on behalf of such owner, lessee, holder of an easement, or occupant of the premises." (Emphasis added). The only specific allegation that plaintiff has pleaded against Mr. Luby is that he is an officer of Mountainside and "responsible for maintaining and managing the property," which places him squarely within the definition of "Landowner." Complaint, para. 3.

[4] Both RSA 212:34, II and III are subject to four (4) limited exceptions to the immunity they provide which are found in RSA 212:34, V. None of the exceptions apply in this matter. There are no allegations (or evidence) of willful, malicious or intentional conduct on the part of Mountainside and/or Mr. Luby (V, a and d), neither Mountainside nor Mr. Luby charged Mr. Bruno a fee to access Mountainside's property (V, b), and the injury was not caused by the acts of a permissive user to a third-party to whom Mountainside and/or Mr. Luby owed a duty (V, c). Notably, these exceptions are not made applicable to part VIII, quoted above.

to owner and manager of private beach pursuant to RSA 212:34, II and RSA 508:14, I against claim for injuries resulting when invited guest dove off dock in shallow water); *see also Reed v. City of Portsmouth*, 2013 WL 1386613, *3-*4 (DNH 2013) (granting summary judgment pursuant to RSA 212:34, II and RSA 508:14, I for injury arising when plaintiff tripped while walking in park).

Under part III of this statute, where Mountainside can be viewed as permitting access to its land under the West lift by virtue of the easement granted to Crotched Mountain, there are separate grounds for immunity. The language is explicit that such permissive use does not establish any duty of care or provide for any liability for injury to an outdoor recreational user.

Finally, under part VIII, there is a third, separate ground for immunity. In this part (which, like part II, above, neither mentions nor requires permissive use to invoke the immunity), the legislature has provided that an outdoor recreational activity participant assumes, as a matter of law, the inherent dangers of that activity. Like RSA 225-A:24, the list of inherent dangers is not exclusive, but rather provides for categories of dangers. Even so, the list does expressly include "variations in terrain, . . . surface or subsurface snow or ice conditions, . . . structures on the land, equipment not in use, . . .and collisions with other objects," any one of which covers the basin at issue here. RSA 212:34, VIII. As a result, plaintiff's claims are barred against Mountainside and its agent, Mr. Luby, as a matter of law and require that judgment enter dismissing the claims against those defendants.

D.	**RSA 508:14 Bars Mr. Bruno's Claims against Mountainside and Mr. Luby.**

Like RSA 212:34, RSA 508:14 provides an independent statutory immunity barring plaintiff's claims against Mountainside and Mr. Luby. RSA 508:14, in pertinent part, states:

> I. <u>An owner</u>, occupant, or lessee of land, including the state or any political subdivision, <u>who without charge permits any person to use land for recreational purposes</u> or as a spectator of recreational activity, <u>shall not be liable for personal injury</u> or property damage in the absence of intentionally caused injury or damage.

RSA 508:14, I (emphasis added). It is undisputed that Mountainside did not charge a fee to patrons of Crotched Mountain who might ski on Mountainside's property (*See* Young Aff., para. 6). It is further undisputed that neither Mountainside nor Mr. Luby intentionally caused injury to Mr. Bruno; the Complaint does not plead it and there is no evidence to support it. As with RSA 212:34, courts interpreting RSA 508:14, I regularly hold that it bars claims for injury of recreational users, like plaintiff in this matter, against landowners. *See Coan v. New Hampshire Department of Environmental Services*, 161 N.H. 1, 6 (2010) (affirming dismissal of action against landowner and stating "[i]mmunity under RSA 508:14, I is available whenever a landowner makes his or her land available to the general public to use for recreational activities or for watching recreational activities, free of charge"); *see also Dolbeare*, *Collins*, and *Reed*, *supra*. As such, RSA 508:14 provides a further and independent bar to plaintiff's claims against Mountainside and Mr. Luby as a matter of law.

E.	**Mr. Bruno Assumed the Risk of His Claimed Injuries.**

Mr. Bruno's claims are further barred against all defendants under the doctrine of primary assumption of the risk. This doctrine applies where, as here, "a plaintiff voluntarily and reasonably enters into some relation with a defendant, which the plaintiff reasonably knows involves certain obvious risks such that a defendant has no duty to protect the plaintiff against

14

injury caused by those risks." *Allen v. Dover Co-Recreational Softball League*, 148 N.H. 407, 414 (2002); *accord Sanchez v. Candia Woods Golf Links*, 161 N.H. 201, 204 (2010). It often finds application in athletic endeavors. As the New Hampshire Supreme Court has recognized, "[p]articipating in a sport gives rise to 'commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation." *Allen*, 148 N.H. at 417. Under this doctrine, "[a] defendant . . . may not be held liable for negligent, or even reckless or intentional injurious conduct that is *not* outside the range of ordinary activity involved in the sport." *Id*. at 418 (emphasis in original).

In the present matter, it is undisputed that Mr. Bruno voluntarily participated in the sport of skiing. Skiing is a sport which has commonly appreciated risks, including collisions with obstacles resulting in injuries of the type Mr. Bruno asserts here. Moreover, Mr. Bruno took additional risks in leaving the designated trail system at Crotched Mountain. Leaving the designated trail system to access other terrain is a voluntary act in and of itself which contains additional inherent risks of injury beyond those that might otherwise be expected, but which certainly encompass the risk of collision and injury. As a result, Mr. Bruno's claims against all defendants fail and require dismissal as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Crotched Mountain Defendants respectfully request that this honorable Court:

A. Grant their Motion for Judgment on the Pleadings and dismiss plaintiff's Complaint; and

B. Grant the Crotched Mountain Defendants such other relief as is equitable and just.

        Respectfully submitted,

        MOUNTAINSIDE AT CROTCHED MOUNTAIN CONDOMINIUM ASSOCIATION, ROGER K. LUBY AND PEAK RESORTS, INC., d/b/a CROTCHED MOUNTAIN SKI AND RIDE AREA

        DEVINE, MILLIMET & BRANCH, P.A.

        By: /s/ Thomas Quarles, Jr.
            Thomas Quarles, Jr., Esq., N.H. Bar #2077
            tquarles@devinemillimet.com
            Brendan P. Mitchell, Esq., N.H. Bar #19652
            bmitchell@devinemillimet.com
            111 Amherst Street
            Manchester, NH  03101

Dated: February 16, 2016        (603) 669-1000

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing Defendants' Answer was sent, via ECF, this day to counsel of record.

Dated: February 16, 2016        /s/ Thomas Quarles, Jr.
            Thomas Quarles, Jr., Esq.

\\MHT-WORLDOX\MHT$\WDOX\DOCS\CLIENTS\004657\104458\M3089796.DOCX