UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

PETER J. BRUNO

    Plaintiff,

v.

MOUNTAINSIDE AT CROTCHED
MOUNTAIN CONDOMINIUM ASSOCIATION
ROGER K. LUBY AND PEAK RESORTS
INC., D/B/A CROTCHED MOUNTAIN SKI
AND RIDE AREA,

    Defendants.

CIVIL NO.:1:15-cv-00366LM

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### I. INTRODUCTION

The Plaintiff, Peter Bruno ("Bruno"), hereby submits this memorandum of law in support of his opposition to Defendants Mountainside at Crotched Mountain Condominium Association, Roger K. Luby, and Peak Resorts Inc. d/b/a Crotched Mountain Ski and Ride Area's Motion for Judgment on the Pleadings. For the reasons set forth in the following paragraphs, the Defendants' Motion for Judgment on the Pleadings should be denied.

### II. BACKGROUND

Plaintiff's Complaint arises from an incident on January 24, 2015 which resulted in serious bodily injury to Peter J. Bruno, a resident of Rhode Island. On that day, Peter Bruno was skiing with his family and friends at Defendant Peak Resorts Inc. d/b/a Crotched Mountain Ski and Ride Area ("Peak Resorts"). He and others he was with purchased a lift ticket and accessed

1

the mountain and all of its trails. As Mr. Bruno and members of his family skied down a green trail, he unknowingly crossed onto land owned by Defendant Mountainside At Crotched Mountain Condominium Association ("Condo Association"). As he continued to ski down the same trail, he suddenly came upon an unmarked storm water retention basin, of which there was no warning. The basin was approximately 10-12 feet deep and 8-10 feet wide. Unaware of its presence, Mr. Bruno fell into the large hole and struck the ground violently. He sustained an intra-articular fracture of the tibia and a displaced fracture of the distal fibula requiring several surgeries. His injuries are permanent in nature. Plaintiff alleges that both Defendants owed Mr. Bruno a duty of care in the planning, operation, maintenance, inspection, and design of the area which was accessible and open to skiers reasonably anticipated to be on the property. Plaintiff further alleges that Defendants also had a duty to warn him of the dangerous condition. The Defendants breached their duty of care and were negligent and reckless in their actions. *See* Complaint and Jury Demand.

### III. PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

The facts submitted to the Court as "undisputed" through Defendants' Memorandum and in the accompanying Affidavits are in fact disputed. The availability and clarity of the trail map identified by Defendants is a factual issue which requires discovery. As submitted by the Defendants, the trail map and brochure (identified as the "mountain guide") categorizes the area where Mr. Bruno was skiing and subsequently injured as open and available to skiers who desired a ski run with low level of skiing difficulty. According to the "mountain guide," the "West Chairlift" is considered the "easiest run." The same document, which according to the Defendants' Memorandum was available to all skiers, warns that "areas beyond ski area boundary are not maintained or patrolled by Crotched Mountain Ski and Ride," and "when you

2

pass beyond the ski area boundary, you leave the area of ski patrol services. You are responsible for your own actions, your own rescue and the cost of your rescue." *Emphasis added. See* Affidavit of Patrick Terry, in support of Defendant's Motion (Exhibit A, Mountain Guide and Ski Brochure). The area on which Mr. Bruno was injured was not beyond the ski area boundary, but within the designated areas for skiers.

Defendants' Motion acknowledges that, although Defendant Condo Association owned the land where they say the incident occurred, Defendant Peak Resorts had an easement to maintain the ski areas, lifts and trail system. Defendant Peak Resorts regularly used this area as a ski run and area on which its employees would teach children and beginners how to ski and snowboard. *See* Affidavit of Peter J. Bruno, In Support of Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings ("Bruno Affidavit"), para. 8.

Since the area where the incident occurred was "maintained" by Defendant Peak Resorts, then logically that area could not have been outside "ski area boundary." In further support that the area was indeed within the ski area boundary, Defendant Peak Resorts conducted an internal and contemporaneous investigation of Mr. Bruno's incident, listing in its internal report that the incident occurred "on-hill" on a trail designated as an "easier" run. *See* Affidavit of Peter J. Bruno (" Bruno Affidavit"), para. 11, (Exhibit B, Ski Patrol Incident Report). There is no document known to be in existence at this time suggesting that Mr. Bruno was ever outside ski area boundary. It should also be noted that mountain personnel conducted a rescue of Mr. Bruno, provided him with emergency medical assistance, and then transported him off the mountain to awaiting ambulance personnel. There was no cost to Mr. Bruno for services by the ski patrol.

Defendants' assertion that the area where Mr. Bruno was injured was not groomed or open to skiers or snowboarders on January 24, 2015 is also in dispute. Discovery and deposition testimony is expected to reflect that Mr. Bruno and his companions observed ski resort personnel conducting ski lessons for youngsters in close proximity to the area where Mr. Bruno was injured. Discovery will also reveal that Plaintiff observed tracks created by grooming equipment in close proximity to the area where he was injured. *See* Bruno Aff. para. 9

The Plaintiff disputes the Defendants' conclusion that Defendant Condo Association never charged patrons of Peak Resorts for access to mountainside land. What is undisputed is that Mr. Bruno, his family, and friends paid to access the mountain. But for his payment of monies he and his companions would not have been able to access the land area where the incident occurred. At this early stage of the litigation, Plaintiff has not had an opportunity to conduct discovery regarding the operational, ownership, financial, marketing and business relationship between Defendants, the Condo Association and Peak Resorts. There has also been no opportunity to discover whether Defendant Condo Association's use of its land (in connection to its relationship with Defendant Peak Resorts), meets the requirements of RSA 212:34 or RSA 508:14.

Suit was filed on September 3, 2015. On January 5, 2016, interrogatories, requests for production of documents and deposition notices were served upon opposing counsel. No responses have been provided, and no depositions have been conducted in light of Defendants' 12(c) Motion.

### IV. STANDARD OF REVIEW

Rule 12(c) allows a party "after the pleadings are closed, but within such time as to not delay the trial, to move for judgment on the pleadings." Fed.R.Civ.P. 12(c); *Feliciano v. Rhode*

4

*Island*, 160 F.3d 780, 788 (1st Cir. 1988). Such a motion will be denied if "the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35 (1st Cir. 2004), *citing Feliciano*. In reviewing a Rule 12(c) motion, the Court must accept "all of the non-moving party's well-pleaded averments factual as true and draw all reasonable inferences in [its] favor." *Feliciano*, at 788. The "standard governing the allowance of a 12(c) motion is generally more generous to the nonmovant" than the standard governing a motion for summary judgment. *McCord v. Horace Mann Ins. Co.*, 390 F.3d 138, 141 (1st Cir. 2004). Judgment on the pleadings under Rule 12(c) may not be entered unless "it appears beyond a doubt that the non-moving party can prove no set of facts in support of her claim which would entitle her to relief." *Feliciano*, at 788; *Santiago de Castro v. Morales Medina*, 943 F.2d 129, 130 (1st Cir. 1991). The Complaint must contain sufficient factual matter that, when accepted as true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*.

## V. ARGUMENT

### A. Defendant Peak Resort's Failure to Properly Mark the Area where Plaintiff was Injured Violated its Responsibility Under RSA 225-A:23 III (c) and therefore the Defendant Peak Resorts Bears Liability for the Injury.

Defendants' conduct in this case falls outside of the activities granted immunity by the ski statute, RSA 225-A. Failure to properly mark a trail "does not involve an inherent risk of skiing" in accordance with RSA 225-A:23. *Nutbrown v. Mount Cranmore, Inc.*, 140 N.H. 675, 683 (1996). The Defendant claims that on January 24, 2015 Mr. Bruno was using part of the mountain that was not part of the designated ski trails. This assertion is false. A plain reading of the Defendant's ski trail map and mountain guide shows that the area on which Mr. Bruno was skiing was designated by Peak Resorts as "West Chairlift" and categorized as an "Easiest Run." *See* Exhibit A, Mountain Guide and Ski Brochure. In its internal investigative report, the

Defendant's Ski Patrol personnel referred to the location of the incident as having occurred "on-hill" and checked the "EASIER" group of trails. *See* Exhibit B, Ski Patrol Incident Report.

If, as the Defendant argues, the area where the incident occurred was **not** part of the ski trails open and intended for use by skiers, the Defendant's indication as described in the documents referenced above creates another factual dispute as to whether Defendant Peak Resorts failed to properly mark the area leading to the large drainage basin. RSA 225-A:23 states, in pertinent part:

**Responsibilities of the Ski Area Operator.**

It shall be the responsibility of the operator to maintain the following signs and designations:

III (c) The operator shall mark the beginning of, and designated access points to, each alpine trail or slope that is <u>closed</u> with a sign in accordance with RSA 225-A:23, I(e). For the purposes of this subparagraph, "designated access points" means the beginning of a trail, slope, or any point where an open trail crosses or intersects the closed trail as shown on the ski area's trail board and trail map. *Emphasis added.*

Defendant Peak Resorts's trail map reflects that "Supernova"(the green trail Mr. Bruno used to access the area where he was injured) intersects with the "Westlift" trail. Discovery will uncover whether Defendant Peak Resorts failed to meet its statutory obligation to properly mark a trail that they presumably intended to be closed. Discovery will also examine if information on the Defendant's trail board gave any further or different direction to skiers.

Even a novice skier upon reading the mountain guide would conclude that they were directed to use the "West Chairlift" run as an easier, beginner run. The ski statute does not grant immunity to the Defendant if it failed to properly mark a trail on its property. Such conduct is specifically excluded from immunity. See RSA 225-A:23(III)(c).

### B. The Basin in which the Plaintiff was Injured is not an Inherent Risk of Skiing as Defined by the Statute and Applicable Law

Plaintiff was injured when he fell into a large, deep drainage basin. Discovery has not been conducted which would disclose the purpose of the basin, its exact location as well as its width, depth, and construction material. There has not yet been a formal examination or inspection of the area where the injury occurred. Plaintiff argues that the basin was not a "man-made object...affixed and necessary to the operation of a ski area" thereby putting it outside the category of items considered inherent risks faced by skiers. *Rayeski v. Gunstock Area/Gunstock Area Comm'n,* 146 N.H. 495, 499 (2001). If it is determined through discovery that the basin served a purpose for the benefit of assisting in the drainage of storm water from the Condo Association residences, or some other seasonal water diversion purpose to benefit that Defendant, it would be removed from the list of inherent risks of skiing, resulting in Defendant Peak Resorts not being entitled to immunity from liability.

"Significantly, the limitation on recovery found in RSA 225–A:24, I, applies only to injuries caused by 'dangers inherent in the sport' of skiing. The statute does not purport to immunize a ski area operator for injuries caused by the operator's own negligent or intentional acts." *Nutbrown,* at 680; *internal cites omitted.* Discovery is required to determine if the basin was necessary for the operation of a ski area, like ski poles and lift components; therefore, it is premature for the Court to find for the Defendants on this issue.

### C. RSA 225-A (Skiers, Ski Area and Passenger Tramway Safety) does not Apply to Defendant Condo Association

#### 1. If discovery confirms that the incident occurred on land owned by Defendant Condo Association, RSA 225-A and its protections are not applicable

7

Defendants' Motion alleges that the area where the injury occurred is located on land owned by Defendant Condo Association. If true, New Hampshire's Ski Statute and its protections are inapplicable to this Defendant. Defendant Condo Association is not a "Ski Area Operator" as defined by RSA 225-A 2 VII.

> 225 A:2 Definitions. In this chapter:
> VII "Ski area operator" means a person who owns or controls the operation of a ski area.

The current record shows that Peak Resorts had an easement for the limited purpose of taking care of its ski lift and surrounding area. Discovery should be permitted to confirm each Defendant's property rights as well as the intended and actual use of the property where the incident occurred. Here, the property owner, Condo Association, cannot shield itself from liability by invoking New Hampshire's Ski Statute. Recognition of this dilemma is reflected in Defendant Condo Association's alternate argument that New Hampshire's two recreational use statutes may also apply to this case.

**2. RSA 212:34 (Propagation of Fish and Game, Liability of Landowner) and RSA 508:14 (Landowner Liability Limited), Are Not Applicable to Plaintiff's Claims and Do Not Shield Defendants Condo Association and Roger K. Luby from Liability**

If an individual pays money to access land, the recreational statute does not apply. See, RSA 212:34 and RSA 508:14. RSA 508:14, the recreational use statute, provides protection from liability to those "owner[s], occupant[s] or lessee[s] of land…who without charge permits any person to use land for recreational purposes." It is undisputed that Peter J. Bruno paid money to access the area where he was injured. Without paying the fee, he would not have been able to get to the green trail which led him to the area of the basin. Discovery is required to fully disclose the scope of any arrangement(s) between Defendants Peak Resorts and Condo

8

Association with respect to the use of the land where the incident occurred. RSA 212:34 V(b) states in pertinent part:

> This section does not limit the liability which would otherwise exists:
> (b) For injury suffered in any case where permission to enter or use the premises for outdoor recreational activity was <u>granted for a charge</u>.... *Emphasis added.*

RSA 212:34 I (a) and (b) state:

> (a) "Charge" means a payment or fee paid by a person to the landowner for entry upon, or use of the premises, for outdoor recreational activity.
> (b) "Landowner" means an owner, lessee, <u>holder of an easement</u>, occupant of the premises, or person managing, controlling, or overseeing the premises on behalf of such owner, lessee, holder of an easement, or occupant of the premises. *Emphasis added.*

Similarly, RSA 508:14 also provides protection to the landowner in circumstances where there has been <u>no charge</u> to enter onto the land:

> **Landowner Liability Limited.**
> I. An <u>owner, occupant, or lessee</u> of land, including the state or any political subdivisions, <u>who without charge</u> permits any person to use land for recreational purposes or as a spectator of recreational activity, shall not be liable for personal injury or property damage in the absence of intentionally caused injury or damage. *Emphasis added.*

Both statutes clearly envision circumstances in which a fee to enter the property is paid to someone other than the owner. In this case, Mr. Bruno paid a fee to Peak Resorts, the holder of an easement, to access land which he has since learned is owned by the Condo Association. Since statutes in derogation of the common law are to be interpreted strictly, the currently undisputed facts fit squarely into the statute's exclusion. *Soraghan v. Mt. Cranmore Ski Resort, Inc.*, 152 N.H. 399, 403, (2005); *citing Sweeney v. Ragged Mt. Ski Area* 151 N.H. 239, 241 (2004).

> **3. RSA 212:34 and 508:14 Are Also Not Applicable Because Defendant Condo Association Did Not Open its Land to the General Public and it is Unclear as to Whether it Derived Revenue or Other Benefits from Skiers' Use of the Land**

For recreational use "immunity to apply, the statute requires that private landowners allow any person as a member of the general public to use their land. [sic] The statute also requires that the landowner do so 'without charge.'" *Soraghan v. Mt. Cranmore Ski Resort, Inc.*, 152 N.H. 399, 403, (2005); *citing* RSA 508:14, I. The requirements of the recreational use statute are not met based on the evidence in the record to date. What is clear, is that the land is not open to "any person as a member of the general public." To get onto the land from the ski resort side, individuals must pay for and obtain a ski lift pass, as did Mr. Bruno and his family. Discovery in this case will uncover whether or not the Defendant Condo Association derived any financial or other tangible or intangible benefit by permitting Peak Resort skiers to use that part of its land.

To access the land from the Condo Association side, individuals must pay for the rental or purchase of a unit which abuts the land used by the ski resort. Renting or purchasing a unit would also likely afford the ability to ski in and out of the condominium unit. Discovery has not been done to explore what type of symbiotic arrangement existed between the Defendants as of January 24, 2015.

The record to date is clear that some sum of money has to pass between a user and at least one of the Defendants in order to access the land, including the land on which Plaintiff was injured.

Furthermore, as discovery has not yet been conducted, it is not clear whether the Defendant Peak Resorts remits some amount of payment directly or indirectly to the Defendant Condo Association. It is also not unreasonable to assume that since Peak Resorts maintains and makes improvements to the Ski Lift and trail on the Condo Association's land, it does so through revenue generated by lift ticket sales, concessions, rentals, etc., all activities engaged in by Mr.

Bruno and his family on January 24, 2015. If and when such discovery is completed, and reveals that the Condo Association did benefit financially from its permitting skiers to use land it owns, it will likely further support Plaintiff's argument that the recreational use statutes do not bar his right to recover.

### D. Whether Mr. Bruno Assumed the Risk of his Injuries Requires the Fleshing Out of Factual Details

Plaintiff contends that suddenly encountering a storm water drainage basin while skiing on an easy trail does not equate to a "commonly appreciated risk" of skiing. Discovery regarding the size, shape, depth, construction, and purpose of the basin should proceed to determine if, as Defendant Peak Resorts alleges, this was an inherent risk that any skier should have anticipated. Plaintiff expects discovery to also uncover that Peak Resorts failed to properly mark the areas leading to the basin, in violation of its statutory obligation.

Additionally, with respect to Defendant Condo Association, Plaintiff disputes that he was an individual who "voluntarily and reasonably enters into some relation with a defendant." Plaintiff was not advised or warned that he was skiing on land owned by Defendant Condo Association. Despite Peak Resorts' allegations that Mr. Bruno left the designated trail system, discovery, including a full examination of the mountain guide and other information disseminated by Defendant, should establish that on January 24, 2015, Mr. Bruno was skiing precisely where he was supposed to be and was in the exercise of due care.

## VI. <u>CONCLUSION</u>

A judgment on the pleadings is inappropriate in this case. There are genuine issues of material fact in dispute. The evidence must be construed in favor of the Plaintiff, who, as nonmoving party opposing the Motion for Judgment on the Pleadings, is entitled to be given the benefit of all favorable inferences that can be drawn from the evidence. Applying this standard

to the facts of this case and for all of the reasons stated above, the Plaintiff hereby requests this Honorable Court **deny** the Defendants' Motion for Judgment on the Pleadings and allow discovery to proceed.

          Respectfully Submitted,

          The Plaintiff,
          Peter J. Bruno,
          By his Counsel,
          Jones Kelleher LLP

          /s/ Patrick T. Jones
          Patrick T. Jones, Esq. (#16242)
          PJones@joneskell.com
          Ralph R. Liguori, Esq. (Pro Hac Vice)
          rliguori@joneskell.com
          JONES KELLEHER LLP
          One Center Place
          Providence, RI 02903
          Tel: 401-273-0800
          Fax: 401-273-0801

DATED: February 29, 2016

## CERTIFICATE OF SERVICE

    I, Patrick T. Jones, hereby certify that I have this day caused a copy of the foregoing document to be filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System.

          /s/ Patrick T. Jones
          Patrick T. Jones